**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| CACTUS WELLHEAD, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-01010-JRG |
| | § | |
| CAMERON INTERNATIONAL | § | |
| CORPORATION, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Opposed Motion for Leave to Serve Supplemental Invalidity Contentions (Dkt. No. 65) ("Motion").  Defendant seeks to amend its invalidity contentions to include potential system art that Plaintiff designed.  Plaintiff elected not to disclose various documents evidencing this potential system art until about two weeks before the close of fact discovery, despite having such documents in its possession and Defendant requesting the information.  Having considered the briefing and the documents cited therein, the Court finds that the Motion should be **GRANTED**.

## I.      BACKGROUND

Plaintiff Cactus Wellhead, LLC ("Cactus") alleges that Defendant Cameron International Corp. ("Cameron") infringes U.S. Patent No. 11,137,109 ("'109 Patent").  (Dkt. No. 1.)  Cactus claims that Cameron's "Automated Valve Greasing System" infringes the '109 Patent, which relates to systems for greasing valves in fracking and well applications.  (*Id.* ¶¶ 17, 22–30, 32–33; Dkt. No. 1-1.)

A relevant timeline leading to Cameron's Motion to amend its invalidity contentions follows:

- May 7, 2025: Cameron served its invalidity contentions, which "reserve[d] the right to present additional prior art" based on discovery developments.  (Dkt. No. 65 at 3.)

- October 10, 2025: Cactus responded to an interrogatory that requested Cactus to identify documents "relating to" the development of the claimed subject matter.  (Dkt. No. 65-5 at 4–7.)  Cactus responded that it began considering a remote greasing system in 2018 and cited documents dated after April 19, 2018, the relevant date to beat for a Cactus system to qualify as prior art.  (*Id.*)

- April 1, 2026: Cactus produced emails regarding a 2018 greasing system it was developing and pitching.  (*Id.* at 4.)

  - In the emails, Cactus internally noted that "[p]rices [were] finalized" for the 2018 greasing system in February 2018 and suggested "advis[ing] Shell of the cost."  (Dkt. No. 65-8 at 1, 2.)

  - Cactus internally emailed drawings of the 2018 greasing system that mirrors figures from the asserted patents on March 6 and April 12, 2018.  (Dkt. No. 65 at 4, 5.)

- April 7, 2026: Cactus's witness admitted that Cactus had a design drawing of a system covered by its patent and that Cactus would have proposed this system to XTO and Pioneer.  (*Id.* at 7, 8.)  All this activity allegedly occurred around or before the relevant prior art date of the asserted '109 Patent.  (*Id.*)

- April 13, 2026: Cameron filed the instant Motion to amend its invalidity contentions and fact discovery closed.

## II.     LEGAL AUTHORITY

Under the local Patent Rules of the Eastern District of Texas, leave to amend invalidity contentions "shall be entered only upon a showing of good cause." P.R. 3-6(b). "'[G]ood cause' requires a showing of diligence." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). Courts in this District consider four factors when determining whether good cause has been shown: (1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice. *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535–36 (5th Cir. 2003).

## III.     CAMERON HAS GOOD CAUSE TO SUPPLEMENT ITS INVALIDITY CONTENTIONS

The Court finds that the four good cause factors weigh in favor of granting Cameron's Motion. As to diligence, Cameron states that it filed its Motion just six (6) days after Cactus first discussed the 2018 greasing system during a deposition and twelve (12) days after Cactus produced emails evidencing the system. (Dkt. No. 65 at 10–12.) Cameron also advances that it "could not have been expected to discover . . . Cactus's [2018 greasing system] any earlier" because Cactus failed to comply with discovery obligations. (*Id.*)

Cactus argues that Cameron was not diligent in disclosing its new invalidity theory because Cactus produced an email in October 2024 (over a year before Cactus disclosed the 2018 greasing system in deposition and emails) expressing that a Crestone Peak company was receptive to Cactus's innovations. (Dkt. No. 67 at 3–5.) Cactus says Cameron should have investigated this lead. (*Id.*) Cactus also contends that it complied with its discovery obligations because the 2018 greasing system does not anticipate the asserted claims, and Cameron only needed to identify systems that practice the asserted claims. (*Id.* at 4, 5.)

3

Cameron's diligence in filing this Motion just days after learning about the 2018 greasing system invalidity theory favors granting Cameron's Motion.  Further, any delay in presenting this new invalidity theory directly resulted from Cactus's discovery deficiencies.  Cameron served interrogatories that required Cactus to identify the documents "relating to" the development of the claimed subject matter months before the close of fact discovery.  (*See* Dkt. No. 65-5 at 4–7.) Cactus, however, failed to disclose its presentations and design documents for the 2018 greasing system until about two weeks before the close of fact discovery.  Cactus's failure to disclose the 2018 greasing system earlier during discovery—when it was required to do so—caused this situation.

Cactus's Crestone Peak email argument does not move the needle.  That 2018 email, which Cameron had access to over a year before the close of fact discovery, specified that a Crestone Peak company was "very receptive to all of the innovations" Cactus introduced during a trip to Denver.  (Dkt. No. 65-11.)  However, the email never mentioned that Cactus had design documents, internal discussions about pricing, and conversations with potential clients for the 2018 greasing system that Cactus designed.  Cameron only learned this requisite information days before filing its Motion.  Moreover, the general "innovations" language did not put Cameron on notice to pursue discovery for the 2018 greasing system as Cactus suggests, especially given that Cactus inadequately responded to Cameron's interrogatories.

The Court agrees with Cameron that Cactus's 2018 greasing system is important.  The system mirrors figures from the asserted patent, Cactus understood it to embody features of the asserted patent, and Cactus allegedly touted it to potential customers before the relevant date of the asserted patent.  Cactus's lengthy analysis for why the 2018 greasing system does not anticipate

the asserted claims (Dkt. No. 67 at 6–11) does not make it any less important: The 2018 greasing system may render the asserted claims obvious.

Cameron mitigated any prejudice by amending its invalidity contentions as soon as it could. Cameron went forward by detailing its Cactus 2018 greasing system invalidity theory in an opening expert report days after learning about the system.  Cactus then had weeks to respond to Cameron's detailed invalidity theory via a responsive report, and Cactus never moved to amend the relevant Docket Control Order deadline to serve its responsive expert report.  Likewise, Cactus does not contend that any deadlines of this case need to be continued to address Cameron's invalidity contention amendments.  So the minimal prejudice to Cactus and the case schedule in allowing Cameron to supplement its invalidity contentions also weighs in favor of granting Cameron's Motion.

On balance, the Court is persuaded that Cameron has good cause to amend its invalidity contentions to include the Cactus 2018 greasing system.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Cameron's Motion for Leave to Serve Supplemental Invalidity Contentions (Dkt. No. 65).

### So Ordered this

**Jul 1, 2026**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE